# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| CURTIS B. LINDSEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.  4:17-cv-02045-KOB-SGC |
| WARDEN ESTES, et al., | ) ) ) |
| Defendants. | ) ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiff has filed a *pro se* amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States.  (Doc. 10).  The amended complaint names the following defendants: Warden Dewayne Estes, Warden Specks, Captain Gary Malone, Lieutenant Gordy, Sergeant William McLemore, and Ms. Thomas, Mental Health Counselor.  (*Id.* at 1-3, 11).  The plaintiff seeks monetary and injunctive relief.  (*Id.* at 5-6).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the amended complaint was referred to the undersigned for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

**I.      STANDARD OF REVIEW**

The Prison Litigation Reform Act, as partially codified at 28 U.S.C. § 1915A, requires this court to screen complaints filed by prisoners against

government officers or employees. The court must dismiss the complaint or any portion thereof that it finds frivolous, malicious, seeks monetary damages from a defendant immune from monetary relief, or does not state a claim upon which relief can be granted. *Id.* Moreover, the court may *sua sponte* dismiss a prisoner's complaint prior to service. *See* 28 U.S.C. § 1915A(a).

Under § 1915A(b)(1) and § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim is frivolous as a matter of law where, *inter alia*, the defendants are immune from suit or the claim seeks to enforce a legal right that clearly does not exist. *Id*. at 327.

Moreover, a complaint may be dismissed pursuant to 28 U.S.C. § 1915A (b)(1) for failure to state a claim upon which relief may be granted. A review on this ground is governed by the same standards as dismissals for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). In order to state a claim upon which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'show that the pleader is entitled to

relief.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007) (alteration incorporated). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Similarly, when a successful affirmative defense, such as a statute of limitations, appears on the face of a complaint, dismissal for failure to state a claim is also warranted. *Jones*, 549 U.S. at 215.

*Pro se* pleadings "are held to a less stringent standard than pleadings drafted by attorneys" and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006). However, they still must allege factual allegations that "raise a right to relief above the speculative level." *Saunders v. Duke,* 766 F.3d 1262, 1266 (11th Cir. 2014) (internal quotation marks omitted).

## II.   PROCEDURAL HISTORY

On December 7, 2017, the plaintiff initiated this action and named as defendants Warden Estes and Sergeant McLemore. (Doc. 1 at 1). The plaintiff alleged that on September 19, 2017, he was handcuffed behind his back when Sergeant McLemore grabbed him around his neck and "manhood," prompting the plaintiff to file a complaint with the Prison Rape Prevention Program. (*Id.*). The original complaint alleged officials failed to keep McLemore away from the plaintiff and that McLemore continued to threaten and verbally harass him. (*Id.* at 1-2). The original complaint alleged prison officials completed an investigation

and determined his claims were unfounded due to the "lack of witnesses" and prison staff's belief of McLemore's version of events. (*Id*. at 2). As relief, the plaintiff requested a restraining order against McLemore and an order requiring transfer to a different prison. (*Id*.).

On February 28, 2018, the undersigned entered an order: (1) notifying the plaintiff of the inadequacies of the claims in the original complaint: (2) requiring the plaintiff to file an amended complaint clearly stating how each named defendant violated his constitutional rights, including the dates and locations of each incident; and (3) notifying the plaintiff the amended complaint must include all of his claims and must not refer back to the original complaint. (Doc. 9 at 1-2). The order explicitly noted the court would only consider the claims set forth in the amended complaint. (*Id*. at 2). On March 13, 2018, the plaintiff filed an amended complaint in naming Estes, Specks, Malone, Gordy, McLemore, and Thomas as defendants. (Doc. 10). The plaintiff alleged McLemore threatened and verbally harassed him and that supervisory officials failed to investigate his complaints; he did not assert any claims concerning a sexual assault by McLemore. (*Id*. at 13-19).

## III.  FACTUAL ALLEGATIONS

On October 24, 2017, the plaintiff initiated a hunger strike in order to "get a supervisor's attention" concerning McLemore's threats and verbal harassment. (Doc. 10 at 13). On October 27, 2017, the plaintiff spoke with Lieutenant Rodgers,

4

a non-party, regarding his hunger strike and asked Rodgers to move McLemore from segregation—the plaintiff's assigned unit. (*Id*. at 13-14). Also on October 27, 2017, the plaintiff went to the infirmary after completing a sick call slip earlier that day. (Doc. 10 at 14). While there, the plaintiff asked medical staff if he could notify a captain or warden of McLemore's "er[r]atic behavior" and daily threats. (*Id*.). Medical staff summoned Warden Specks, and the plaintiff spoke with him about McLemore "in detail;" Specks stated he would "look into it." (*Id*.). The plaintiff repeatedly asked Specks for assurances he would be transferred to a different prison or that McLemore would be reassigned. (*Id*.). Specks stated McLemore could not be reassigned because he was harassing another officer and the plaintiff could not be transferred due to a pending investigation. (*Id*.). Specks instructed the plaintiff to go back to his dorm and eat, but the plaintiff stated he would not end his hunger strike until the matter with McLemore was resolved and that he would have to "follow up with some paper work." (*Id*.).

On October 30, 2017, prison staff prepared to transfer the plaintiff to Elmore County concerning an assault charge he received while incarcerated at Draper Correctional Facility. (Doc. 10 at 15). As officers were escorting the plaintiff, McLemore looked at him angrily. (*Id*.). The plaintiff told Captain Malone that McLemore was harassing and threatening him and requested Malone "do something about it." (*Id*.). Malone ignored the plaintiff. (*Id*.).

When the plaintiff returned from court in Elmore County, he was assigned back to the D-2 side of segregation. (Doc. 10 at 15). On November 13, 2017, the plaintiff wrote a letter to Commissioner Jefferson Dunn concerning events at the prison but received no response. (*Id*. at 16). On November 16, 2017, the plaintiff wrote the Equal Justice Initiative concerning McLemore's conduct. (*Id*.). On December 7, 2017, representatives from the Equal Justice Initiative came to the prison and spoke with the plaintiff. (*Id*.).

On January 11, 2018, between 10:30 a.m. and 11:00 a.m., Warden Estes walked through segregation on the D-2 side. (Doc. 10 at 16). The plaintiff stopped Estes and said McLemore had been harassing and threatening him. (*Id*.). When the plaintiff asked Estes if he was going to do anything about McLemore's behavior, Estes responded, "I got you." (*Id*.). When Estes again walked by, the plaintiff asked if he heard everything he had said earlier. (*Id*.). Estes responded affirmatively and said he would "take care of it." (*Id*.). However, Estes did not take any action against McLemore. (*Id*.).

On January 20, 2018, McLemore refused to give the plaintiff a food tray during lunch. (Doc. 10 at 16). The plaintiff claims McLemore was retaliating against him for his complaints. (*Id*.). On the same day, McLemore escorted the nurse for evening pill call, and the plaintiff did not receive his blood pressure

6

medication; he did not receive his medication until the following morning. (*Id.* at 16-17).

On January 22, 2018, McLemore again refused to give the plaintiff a food tray. (Doc. 10 at 17). On January 23, 2018, McLemore and, Sergeant Dent, Officer Kendrick, and Officer Smith, all non-parties, conducted a shakedown of the plaintiff's cell. (*Id.*). During the shakedown, Dent accused the plaintiff of calling McLemore a derogatory name. (*Id.* at 17). McLemore returned to the plaintiff's cell and asked if he was talking to him; the plaintiff did not respond. (*Id.*).

On January 30, 2018, McLemore called the plaintiff a "rat" during pill call and claimed the plaintiff engaged in homosexual activity. (Doc. 10 at 18). Later that day, between 4:00 p.m. and 4:20 p.m., McLemore refused to give the plaintiff a food tray. (Doc. 10 at 17). McLemore then stood on "the rock," called the plaintiff to the cell door, and began verbally harassing and threatening him for approximately thirty minutes. (*Id.* at 17-18). The plaintiff claims McLemore is affiliated with the "Growth and Development" gang, or "G.D.," and that McLemore told him all of his "Gs" were waiting to harm him. (*Id.* at 5, 18).

On February 26, 2018, the plaintiff went to the infirmary. (Doc. 10 at 18). While a nurse drew the plaintiff's blood, McLemore came into the infirmary and stood by the doorway. (*Id.*). McLemore called the plaintiff a coward and said he

wanted to beat him. (*Id.*). McLemore also said he could envision hitting the plaintiff's head with his baton. (*Id.*). The plaintiff stated he would not argue with McLemore. (*Id.* at 18-19).

On March 10, 2018, McLemore escorted an inmate to segregation. (Doc. 10 at 19). McLemore stopped by the plaintiff's cell and asked him, "What the f*** are you looking at[?]" (*Id.*). The plaintiff did not respond. (*Id.*). The plaintiff notified the other five defendants of McLemore's behavior, but they did not resolve the matter. (Doc. 10 at 14, 15, 19).

## IV. ANALYSIS

### A. Official Capacity Claims

To the extent the plaintiff asserts constitutional claims against the defendants in their official capacities for monetary damages, his claims are due to be dismissed under the doctrine of sovereign immunity. It is well established that the Eleventh Amendment bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity also bars official capacity claims for monetary damages brought against state officials. *Id.* at 101. Accordingly, the plaintiff's official capacity claims for monetary damages are due to be dismissed for failing to state a claim upon which relief can be granted. The remainder of this report addresses the plaintiff's individual capacity claims.

### B. <u>Injunctive Relief</u>

The plaintiff requests an order requiring prison officials to transfer him to another prison for his safety. (Doc. 10 at 5) The Alabama Department of Corrections' online inmate database indicates the plaintiff is currently assigned to W.E. Donaldson Correctional Facility and is no longer housed at St. Clair Correctional Facility, where McLemore is employed.[1] "Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985). Thus, the plaintiff's request for injunctive relief is due to be denied as moot.

### C. <u>Sergeant McLemore</u>

The amended complaint alleges McLemore threatened and harassed the plaintiff. (Doc. 10 at 13-19). The plaintiff claims he spoke with several prison officials about McLemore's behavior but McLemore continued to threaten and harass him. (*Id*. at 14-15, 19).

#### 1. Verbal Harassment and Threats

The plaintiff's claims concerning McLemore's threats and verbal harassment are due to be dismissed. Specifically, threats and verbal abuse alone, no matter how repugnant or unprofessional, do rise to the level of a constitutional violation.

---

[1] *See* http://doc.state.al.us/InmateSearch. The record confirms the plaintiff's new address. (*See* Doc. 11).

*See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir. 2008) (threats and verbal abuse insufficient to state a constitutional claim); *Ayala v. Terhune*, 195 F. App'x 87, 92 (3d Cir. 2006) ("[A]llegations of verbal abuse, no matter how deplorable, do not present actionable claims under § 1983."); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"). While defendant McLemore's alleged threats and harassment were inappropriate and upset the plaintiff, the amended complaint does not allege McLemore attempted to carry out his threats or physically harmed the plaintiff.

The allegations that McLemore accused the plaintiff of engaging in homosexual activity and called him a "rat" could state a constitutional violation in certain circumstances not present here. (Doc. 10 at 18). *See Harmon v. Berry*, 728 F.2d 1407, 1408-09 (11th Cir. 1984) (inmate's claims that prison officials had labeled him a snitch, resulting in an inmate attack, were sufficient to state a claim); *Block v. Pohling*, 735 F. App'x 555, 558 (11th Cir. 2018) (describing an inmate in derogatory terms indicating he is homosexual in the proximity of other inmates, or "branding" him, presents a substantial risk of serious harm to that inmate).

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (internal quotation marks omitted). To establish a deliberate

indifference claim for damages under § 1983, an inmate must show that (1) there was a substantial risk of serious harm, (2) the defendant was deliberately indifferent to that risk of harm, and (3) a causal connection between the defendant's conduct and the violation. *Lane v. Philbin*, 835 F.3d 1302, 1307 (11th Cir. 2016).

Here, the plaintiff does not allege McLemore's statements caused any harm; absent is any allegation that other inmates have attacked or threatened him due to the statements. Thus, the plaintiff necessarily has not pled facts showing a causal connection between McLemore's conduct and any resulting harm. *See Block v. Pohling*, No. 16-15637, 2018 WL 2110781, at *3 (11th Cir. May 2, 2018) (finding no direct link between corrections officer's derogatory statements about inmate's homosexuality and resulting harm). Accordingly, the plaintiff's claims against McLemore based on his threats and verbal harassment are due to be dismissed.

### 2. Retaliation

The amended complaint alleges McLemore refused to give the plaintiff meals on three occasions in January 2018—retaliation for his complaints. (Doc. 10 at 16-17). The plaintiff also claims McLemore escorted a nurse during pill call on January 20, 2018, when he was denied his blood pressure medication. (*Id.*).

"First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas v. Yates*, 535

11

F.3d 1316, 1321 (11th Cir. 2008) (internal quotations and citation omitted). The plaintiff does not allege that McLemore personally denied him blood pressure medication on January 20, 2018. Other than escorting the nurse, the plaintiff has not alleged any facts that McLemore had anything to do with the nurse's failure to give him his blood pressure medication. Therefore, any retaliation claim based on this incident is due to be dismissed. However, the plaintiff has alleged sufficient facts to warrant a response from McLemore concerning retaliation in the form of withholding meals on three occasions in January 2018.

      D. **<u>Supervisory Liability</u>**

The plaintiff claims he informed Estes, Specks, Malone, Gordy, and Thomas of McLemore's behavior, but they did not resolve the matter. (Doc. 10 at 14-15, 19). Because the plaintiff fails to state a claim for relief based on McLemore's alleged threats and verbal harassment, any claim against the other defendants necessarily fails. Moreover, to the extent the plaintiff complains these officials failed to investigate his allegations against McLemore, there is no constitutional right to an investigation of incidents of the type alleged. *See generally Vinyard v. Wilson*, 311 F.3d 1340, 1355-56 (11th Cir. 2002) (no constitutional right to an investigation into a complaint of excessive force).

To the extent the plaintiff seeks to implicate Estes, Specks, Malone, Gordy, and/or Thomas under the concept of *respondeat superior* based on McLemore's

alleged retaliation in the form of denying meals in January 2018, "[i]t is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). If supervisory liability under § 1983 cannot be established by the supervisor's personal participation in the complained acts, liability may be shown by "the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988).

> A causal connection may be established when: 1) a "history of widespread abuse" puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so.

*Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (quotation marks and citations omitted).

Although the plaintiff alleges he notified the supervisory defendants in

September and October 2017 that McLemore was threatening and verbally harassing him, he does not allege he informed any of these defendants McLemore denied him food trays in January 2018. (Doc. 10 at 14-15, 19). Thus, the plaintiff has not sufficiently alleged Estes, Specks, Malone, Gordy, and/or Thomas were aware that McLemore was retaliating against the plaintiff by denying him food. Additionally, the plaintiff has alleged only isolated incidents in which McLemore refused to give him food. Alone, these isolated incidents do not demonstrate a "history of widespread abuse" such that Estes, Specks, Malone, Gordy, and/or Thomas knew of the need to address McLemore's alleged retaliation. Neither does the plaintiff allege these defendants: (1) maintained a custom or policy resulting in deliberate indifference to his constitutional rights; or (2) directed subordinates to act unlawfully or knowingly failed to prevent unlawful action.

The plaintiff's claims against Estes, Specks, Malone, Gordy, and Thomas are due to be dismissed for failing to state a claim upon which relief may be granted because the amended complaint does not allege: (1) their personal participation in the actions about which he complains; or (2) any facts indicating a causal relationship between an action undertaken or policy enacted by these defendants and the alleged constitutional deprivations.

## V.   RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** all claims in this action, except the plaintiff's retaliation claims against McLemore in his individual capacity based on denial of meals in January 2018, be **DISMISSED WITHOUT PREJUDICE**, for failure to state a claim upon which relief can be granted.  28 U.S.C. § 1915A(b)(1).  It is **FURTHER RECOMMENDED** the remaining claims be **REFERRED** to the undersigned for further proceedings.

## VI.   NOTICE OF RIGHT TO OBJECT

The plaintiff may file specific written objections to this report and recommendation.  The plaintiff must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected

to factual and legal conclusions if necessary in the interests of justice.  11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

The plaintiff may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  The plaintiff may only appeal from a final judgment entered by a district judge.

The Clerk of Court is **DIRECTED** to provide a copy of this report and recommendation to the plaintiff.

**DONE** this 20th day of November, 2018.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE